# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**VERNON J. LEFTRIDGE, JR., &  J.L.,**
**Plaintiffs,**

**vs.**                                        Docket No.: 13cv1065 RNC

**TAMMIE LYNN GILDEA, personal, individually, and in her,**
**official capacity**

**SUPREME JUDICIAL COURT OF CONNECTICUT,**

**SEAN KEHOE, personal, individually and in her official capacity,**

**THOMAS CREAN, personal, individually and in his official capacity,**

**JENNIFER AGUILAR, personal, individually and in her official capacity,**

**JUDITH BROWN, personal, individually, and in her official capacity,**

**DAVID GAGE, in his personal, individual and official capacities**
**as clerk of Norwich Superior Court,**

**SHALOOM HASS, personal, individually and in her official capacity,**

**TERESA DREW, personal, individually and in her official capacity,**

**KENNETH SHLUGER, personal, individually and in his official capacity,**

**SANDRA BAIRD, personal, individually and in his official capacity,**

**JOHN BOLAND, personal, individually and in his official capacity,**

**CAITLEN CALDLER, personal, individually and in her official capacity,**

**KRAIG (LAST NAME UNKNOWN), personal, individually and in her official capacity,**

**LAURIE GILBERT, personal, individually and in her official capacity,**

**JOHN DOE, an unnamed clerk at the Norwich Family Court, personal, individually and in her**
**official capacity, JANE DOES unnamed court reporters and clerks at the Norwich Family Court,**
**personal, individually and in her official capacity,**

**CONNECTICUT DEPT. OF SOCIAL SERVICES,**

**JOHN DOE, numbers ONE & TWO, & JANE DOE, numbers ONE & TWO,**
**Defendants,**

## COMPLAINT

### Introduction and Jurisdiction

1. This is a complaint for relief under 42 U.S.C. §1983, with pendant state claims, against guardian ad litem, certain current and past officials, workers, and judges in the Connecticut court system, along with other institutions, agencies, social workers and conspirators:

A. For declaratory and injunctive relief - Defendants, in conspiracy with Tammie Lynn Gildea, David Gage, Teresa Drew, Kenneth Shluger, Shaloom Hass, Sean Kehoe, Thomas Crean, Jennifer Aguilar, Caitlin Caldler, Daniel Schaefer, John Does, Jane Does and each other, violated Mr. Vernon James Leftridge Jr. and his minor child son J.L.'s protected due process rights by a pattern and practice of criminally editing, falsifying, and manipulating official court hearing transcripts, tapes, docket records, case files, and impounded files in their Magistrate and Family Court post custody order case, and used plaintiffs May 19, 2005 Closed Custody Case and anti-Joint Custody law to deprive plaintiffs of any meaningful remedy.

B For damages - Defendants, in conspiracy with each other, deprived plaintiffs of due process and equal protection of the law in the Connecticut State Courts for three years, resulting in the "kidnapping" of plaintiff minor-child plaintiff son J.L. under color of state law.

C. For Pendant State Claim - Defendants, by their actions intentionally interfered with Mr. Vernon James Leftridge Jr's (hereinafter "plaintiff" of "Mr. Leftridge")parent-child relationship, by their fraudulent and deceitful actions in his post custody case that went to a final judgment on May 19, 2005, but, unconstitutionally disturbed by the defendants which, caused the injuries complained of and kidnapping.

2. Jurisdiction for this action is pursuant to 28 U.S.C. §1331, as it deals with a civil complaint arising under the Constitution and laws of the United States, more specifically, 42 U.S.C. §1983, and the 4th, 5th and 14th Amendments to the United States Constitution.

**3. Jurisdiction of the pendant state claim is pursuant to 28 U.S.C. §1367, as it is founded on essentially the same factual foundation.**

**4. The State of Connecticut, by virtue of all applicable Common Laws and Articles of the Connecticut Declaration of Rights, has made itself accountable for suit in Federal Court, precluding immunity under the Eleventh Amendment of the United States Constitution.**

### Parties

**5. Plaintiff Vernon James Leftridge Jr. (Mr. Leftridge) and J.L. (minor-child son) is African American U.S. citizens and natural persons domiciled at 73 A. Congress Street, Hartford, Connecticut 06114.**

**6. Defendant Kenneth Shluger ("Judge Shluger") is the chief family justice of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. He is sued in his personal, individual and official capacities.**

**7. Defendant Norwich Magistrate and Family Court is a unit of the Connecticut Judicial Branch Trial Court, located at 80 Washington Street, Hartford, Connecticut.**

**8. Defendant Kraig "Doe", ("John Doe") is the deputy chief clerk of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. He is sued in his personal, official and individual capacities.**

**9. Defendant John Boland ("Judge Boland") was, at all pertinent times, a justice of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. He is sued in his personal, official and individual capacities.**

**10. Defendant Tammie Lynn Gildea ("GAL Gildea") is and/or was the guardian ad litem of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut and resides in Waterford, Connecticut. She is sued in her personal, official and individual capacities.**

11. Defendant Sandra Baird ("Magistrate Baird") is a Magistrate of the Norwich Magistrate Support Court, located at One Courthouse Square, Norwich, Connecticut. She is sued in her personal, official and individual capacities.

12. Defendant Sean Kehoe ("Asst. AG Kehoe") is a assistant attorney general of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. She is sued in her personal, official and individual capacities, whose office is located at 55 Elm Street, Hartford, CT 06106.

13. Defendant Thomas Crean ("Asst. AG Crean") is a assistant attorney general of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. He is sued in her personal, official and individual capacities, whose office is located at 55 Elm Street, Hartford, CT 06106.

14. Defendant Jennifer Aguilar ("Asst. AG Aguilar") is a assistant attorney general of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. She is sued in her personal, official and individual capacities, whose office is located at 55 Elm Street, Hartford, CT 06106.

15. Defendant Caitlin Calder ("Asst. AG Calder") is a assistant attorney general of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. She is sued in her personal, official and individual capacities, whose office is located at 55 Elm Street, Hartford, CT 06106.

16. Defendant Teresa Drew ("State Agent Teresa Drew") is a state agent and state representative of the Norwich Family Court, located at One Courthouse Square, Norwich, Connecticut. She is sued in her personal, official and individual capacities, whose office is located at 99 Main Street, Norwich, CT 06106.

17. Defendants Jane Does ("Jane Does") is the transcript and audio tape recording coordinator at the Norwich Magistrate and Family Court, located at One Courthouse Square, Norwich, Connecticut.  They are being sued in their personal, official and individual capacities.

18. Defendants John Does ("John Does") is the audio tape coordinator at the Norwich Magistrate and Family Court, located at, located at One Courthouse Square, Norwich, Connecticut.  They are being sued in their personal, official and individual capacities.

19. Defendant Shaloom Hass, ("Haas") is a licensed attorney, an agent or employee of Norwich Family and Magistrate Court, and was the primary supervisor of court recording docketing services to the public and plaintiff. She is sued in her official and individual capacities.

20. Defendant Tammie Gildea is a guardian ad litem (GAL) for the Plaintiff. She is sued in her personal, official and individual capacities.

21. Defendant Connecticut Department of Social Services ("DSS") is an executive agency of the Connecticut State government.

22. Defendant David Gage, ("David Gage") is a licensed attorney, case flow coordinator, and the new deputy clerk of Plaintiff's post custody case. He has controlled, colluded with, and manipulated many of the other defendants to bring about the violations complained of herein. He is sued in his personal, individual and official capacity.

23. Defendant Laurie Gilbert ("Gilbert") is a duly licensed Norwich Family Court Clerk Office assistant, and served as clerk's office judicial records and judicial notices for the Norwich Magistrate and Family Court and Family case, as set forth herein. She is sued in her personal, individual and official capacity.

24. Defendants Jane Doe and John Doe ONE and TWO are unidentified agents of one or some of the defendants who compromised and manipulated legal records and documents that lead to Mr. Leftridge and his minor-child, requiring hospitalization, and post custody threatened so that he would never see his minor child son again because of the actions of the defendants.

**Background Facts**

25. The Plaintiff was never married to plaintiff minor-child son J.L. mother and was awarded custody of said child plaintiff in May of 2005, in the Norwich Family Court. Plaintiff son Juwan James Leftridge ("J.L.") was born on September 27, 1997. Plaintiffs filed the initial writ and summons custody law suit in 2004 as pro se plaintiff-petitioner custodial parent/father against the lay person pro se respondent mother Kenisha Wiggins (state defendant). Then later in 2004, plaintiff Vernon James Leftridge Jr. hired Attorney Donald R. Williams to represent him and the state appointed Attorney Tammie Gildea as the guardian ad litem to represent plaintiff minor-child son J.L. On May 19, 2005, State Court Family Judge Cynthia Sweinton established full jurisdiction over plaintiff family case and issued final orders and a final judgment without trial.  Both parent of J.L. did not petition for any support on May 19, 2005 and no financial affidavits were submitted or completed on May 19, 2005. Plaintiff on May 19, 2005 was awarded custody of his minor child J.L. AND also awarded legal tax exempt custody to claim J.L. on his federal and state taxes.  Plaintiff J.L. was living with both parents jointly without any state government interference on their family privacy and awarded tax exempt property pursuant to Family Judge Cynthia Sweinton May 19, 2005 final orders, May 19, 2005 final judgment and May 19, 2005 final stipulations.  In 2007/2008 defendant David Gage threaten plaintiff, which, was investigated by his immediate supervisor Nancy Kierstead and Judicial Human Resources. The State of Connecticut was not a filed appearing party on May 19, 2005. In 2010 Teresa Drew and David Gage injected themselves into plaintiffs closed custody case without the plaintiffs' permission, GAL Tammie Gildea permission or plaintiff Attorney Donald Williams knowledge or permission. The defendants violated the plaintiffs' family privacy and civil rights and kidnapped plaintiff minor-child son J.L.  The defendants tampered with court records, comprised court transcripts, deleted GAL Tammie Gildea filed appearance and reports and worked in collusion and concert with one-another to cover-up color of law abuses, corruption, bad faith, kidnapping, unconstitutional state interferences and scandal against the plaintiffs.

26. Between 2004 and 2013, Mr. Leftridge is a custodial parent sharing joint physical custody legal custody of his minor-child son J.L. with x-girlfriend Kenisha Wiggins, by virtue of a final custody judgment

terminated in plaintiffs favor in the Norwich Family Court, dated May 19, 2005. Sometime in 2010 defendant Teresa Drew and David Gage invaded, interfered with plaintiffs structured family privacy, unlawfully and unconstitutionally injected themselves into plaintiffs closed custody case unjustly without due process of law.

### Concord District Court Facts

27. On January 31, 2012, filed suit against the state agency executive and judicial branch and requested an ex parte restraining order pursuant to federal law and Connecticut General Statue (C.G.S.), at Bridgeport District Court, on behalf of himself and J.L., where PLAINTIFFS alleged that defendants in their official capacity abused their authority, and engaged in state government interferences on plaintiffs family privacy in violation of both federal and state constitutions.

28. On April 27, 2011 Teresa Drew attempted to have plaintiff who is the custodial parent father of minor-child J.L. put into prison for no justifiable reasons in violation of Connecticut General Statues Joint Custody laws, violation of May 19, 2005 Final Custody May 19, 2005 Judgment.  Teresa Drew April 15, 2011 filed appearance in plaintiffs closed custody case has not been recorded as a part of the scandal that contributed to the unlawfully abuse of her authority under color of law against the plaintiff Vernon James Leftridge Jr. AGAINST the petitioner or placed the petitioner in "fear of imminent serious physical injuries, irreparable harm and harassment."

29. On April 15, 2011 Teresa Drew filed an appearance in plaintiffs closed custody case and unlawfully abused her authority under color of law against the plaintiff Vernon James Leftridge Jr. AGAINST the petitioner or placed the petitioner in "fear of imminent serious physical injuries, irreparable harm and harassment."

30. On August 27, 2010, Defendant David Gage and Teresa Drew put on an illegal and unconstitutional hearing with Kenisha Wiggins without the plaintiffs, defendant Tammie Lynn Gildea or plaintiff Attorney Donald R. Wlliams present, which was the start of the imminent

serious injuries, harms, coaching of plaintiffs minor-child and kidnapping.

31. On September 27, 2010, Judge Shluger held an unconstitutional hearing with Kenisha Wiggins without the plaintiffs, defendant Tammie Lynn Gildea or plaintiff Attorney Donald R. Wlliams present, which was the continuation of the imminent serious injuries, harms, coaching of plaintiffs minor-child and kidnapping.

32. The court will not allow Mr. Leftridge or his counsel at the time to obtain its complete records, audio tapes and files on this case. He asked in August 2010 through 2013 to examine and for copies of the complete records, docketed appearances and files with GAL Tammie Gildea and her recommendations through plaintiffs, plaintiff counsel, verbal and written request who made these formal request in person and over the phone.

### Norwich Family
### Court Order Facts

33. On April 27, 2011 Teresa Drew through the other defendants made an ex parte contempt application to the Norwich Magistrate Court in lieu of the established jurisdictional Norwich Family Court for a contempt order based on a compromised, tampered and fabricated record that she knew was unlawful, on behalf of herself, David Gage and defendants, in which she again used the same misleading allegations and unconstitutional/illegal hearings. No filed appearances or evidence whatsoever was presented which conformed to the legal standard required to issue an order under the law.

34. Nonetheless, Family Magistrate issued an ex parte order based on a September 27, 2010, illegal Family Court Order by Judge Shluger which, was VACATED on June 12, 2012, Appellate Docket No. A.C. 33154.

35. At a hearing on May 19, 2005, Mr. Leftridge and his attorney Donald R. Williams having moved for FINAL ORDERS presented a motion for custody of J.L., and for years to claim child tax exempt order, in front

of Defendant Judge Cynthia Sweinton, which, was stipulated and granted.

36. At May 19, 2005 hearing, the respondent mother Kenisha Wiggins who represented herself as the RESPONDENT-DEFENDANT mother did not appeal the final orders and Defendant Thomas Crean clarified that Cynthia Sweinton COMPLETE JURISDICTION over the Magistrate Courts. Both parents of J.L. did not present any financial affidavit to the Family Court Judge on May 19, 2005 and FINAL ORDERS and FINAL JUDGMENT was entered in closed until the 2010 invasion and unlawful interferences that caused the injuries, harms and kidnapping.

37. At the May 19, 2005 hearing, Judge Cynthia Sweinton took open court stipulations and testimony.

38. Defendants "were not" an appearing party on May 19, 2005 to the FINAL JUDGMENT

39. Judge Cynthia Sweinton established full jurisdiction over plaintiff final judgment custody case on May 19, 2005.

40. Mr. Leftridge's  later discovered that the transcripts, appearances and tape of hearings was edited as a pretext to harass and harm plaintiffs.

41. At June 7, 2011 hearing, Judge Boland allowed Mr. Leftridge's motion for discovery and subpoena of materials, all 2010 service records and all 2010 pleadings and notices by Teresa Drew and the defendants.

42. Defendant Teresa Drew testified under oak that they were no 2010 service records, no 2010 appearances and no 2010 pleadings served on plaintiffs appearance address and she also testified that she did an "investigation" and produced no records or reports from Drew office, whom is friends of Defendant David Gage, Sean Kehoe and Thomas Crean, and who had all worked with David Gage at the same courthouse.

43. In 2011 through 2013, plaintiff requested that defendant Tammie Gildea return records and disclose all her recommendations, reports, records and evaluations of Mr. Leftridge and J.L.

44. In November of 2011, GAL Tammie Gildea returned plaintiff request for records and unclaimed notices that she no longer resides at her last known address New London Broad Street Law Firm. Plaintiff had contacted Tammie Gildea to obtain copies of her records, recommendation and reports that were used in Tammie Gildea GAL report. Tammie Gildea had met with both parents and knows that J.L was living with plaintiff four days per week every weekend.

45. In 2004, Mr. Leftridge retained counsel to deal with the aftermath of the sole custody hearing. This attorney made stipulations with Judge Cynthia Sweinton on May 19, 2005 after communication with GAL Tammie Gildea and Kenisha Wiggins, who agreed to continued custody schedule in the best interest of all parties and the child.

46. At a hearing on May 19, 2005 at the Norwich Family Court, Judge Cynthia Sweinton struck Tammie Gildea alleged report due to: a) Bias, and; b) biological parents disagreements to her report that interfered with child's welfare and Kenisha Wiggins every weekend work schedule.

47. GAL Tammie Gildea failed to show to May 19, 2005 custody hearing after being paid to properly represent J.L..

48. At that hearing on May 19, 2005, both of J.L. loudly argued with the judge to not strike the GAL report, because neither parent agreed to change the cemented every weekend schedule to J.L. father that would have affected the child's well-being and established custody schedule and mother every weekend work schedule.

49. At that hearing, the complainant Kenisha Wiggins testified repeating the same allegations that she did not ask for the weekend schedule to be changed in her testimony to the court. Her entire testimony is edited from the transcripts and hearing tape.

50. At that hearing, Judge Cynthia Sweinton ordered that the guardian ad litem report be produced, and granted plaintiff custody final order and alternating tax exempt years to claim child on his tax exempted taxes.

51. After a delay of several months during which no evaluation was performed, Attorney Donald Williams made recommendations. Tammie Gildea further delayed the process by failing to show up to hearings and changing her law firm address with a lack of forwarding address to receive notices from plaintiffs.

52. At a hearing on August 9, 2012, Judge Shluger heard a late magistrate appeal that was not filed by the respondent mother, but, rather by Sean Kehoe who did not even show up to the hearing to burden, annoy, harass and harm plaintiffs and the public's tax dollars.

53. Judge Shluger has continued to be arbitrary towards plaintiffs.

54. Magistrate Sandra Baird did not have the power and/or authority or the discretion under Connecticut Constitution, Final May 19, 2005 Custody Judgment to disturb closed orders that were never appealed by the respondent mother, which, also caused kidnapping.

55. Defendant Tammie Gildea was assigned as GAL.

56. No report was ever produced, nor did Mr. Leftridge get an evidentiary hearing.

57. Despite Mr. Leftridge's post request at further hearings to disclose Tammie Gildea report, neither Judge Shluger nor Judge Boland ordered the report to be produced, so that he could get his evidentiary and discovery hearing.

58. Neither Magistrate Harris Liftshiz, Judge Boland nor any Magistrate did not hold Mr. Leftridge in contempt of court, despite Teresa Drew thirsty racially motivated attempts, harassment, color of law abuses in concert with defendants including defendants direct and continued refusal to produce the GAL report requested by the plaintiff.

59. On or about November 2012, a attorney grievance was filed against Sean Kehoe including motion for sanctions pursuant to res judicata doctrine.  Defendant failed to properly have Judge Shluger rule on said motion for sanctions against Kehoe and concealed "services" from the courts hearings officers.

60. On or about December 2012, defendant Shaloom Haas failed to properly schedule several of plaintiffs' post pleadings as a pretext to harass and annoy plaintiffs that has contributed to the kidnapping of plaintiffs' minor-child son J.L.

61. On February 14, 2011, Judge threatened Mr. Leftridge several times to harass and annoy plaintiffs to have plaintiff unjustly thrown in jail for no reason. All of these threats from Judge Shluger were edited out of the transcribed tape.

62. Mr. Leftridge has been egregiously harassed by the defendants because of their race, color, black, disability and in retaliation for plaintiff exposing the scandals, corruption and unlawful procedures kidnapping his minor-child son J.L.

63. On April 27, 2011, plaintiff was not put in jail and forced to face a unjust threat of incarceration that was organized by David Gage.

64. At this same hearing, Magistrate Harris directed that plaintiff follow September 27, 2010 Judge Shluger order until plaintiff appeal is resolved.

65. Kenisha Wiggins admitted that she was the mother of 16 year old J.L., whom she has kidnapped by inducement by defendant Sean Kehoe.

66. Although defendant Tammie Gildea was mandated guardian ad litem under the parent custody laws and laws of Connecticut, she made no statutorily required report to the Connecticut Superior Court or to the Connecticut Department of Social Services, and did not make a referral to the district attorney for criminal prosecution for the injuries and harms caused by the other defendants.

67. Defendant Shaloom Haas and defendants unlawfully removed services from plaintiff pleadings to mislead Magistrates and Judges as a pretext that hearing officers would rule against the plaintiffs and did not take into account the information previously presented about the incorrect record from Magistrate Harris Liftiz, plaintiffs and J.L. Mother.

68. On August 27, 2010, in front of      Magistrate Richard Adams, defendant David Gage and defendant Teresa Drew "put on" an illegal hearing without the GAL Tammie Gildea and plaintiffs' knowledge and consent.

69. At that hearing, defendant David Gage coached Teresa Drew and Magistrate Richard Adams without any of plaintiff's attorneys or plaintiff present in an illegal attempt to reopen a closed May 19, 2005 custody case that was terminated on May 19, 2005 in plaintiffs favor. These actions were taken to interfere and disturb a closed custody case without the plaintiffs' permission, which is outside the magistrate's jurisdictional power.

70. At that hearing, Defendant Teresa Drew made false statements that she had served papers on plaintiffs brother Sylvontae Bishop as she was coached by David Gage what to say in court without the GAL, plaintiffs or plaintiff's attorneys Tammie Gildea and Attorney Donald R. Williams knowledge or presents.

71. At the hearing, made vacating rulings based on fraudulent and misrepresentations made by Teresa Drew and David Gage, and did not even acknowledge plaintiff filed abobe U.S. Post Office Box 747, Groton, Connecticut 06340, which, the state was utilizing in federal case number 3:07cv1166(VLB) Vernon J. Leftridge, Jr. vs. Connecticut State Trooper, et al..

72. It is alleged that Judge Shluger retaliates against Connecticut citizens that file law suits against law enforcement officers in Connecticut "placing another in fear of imminent serious injuries and harm".

73. On August 24, 2010, plaintiff modified his adobe Groton Post Office Box 747 address and added an additional Hartford Post Office Box, which, the defendants had concealed, altered, and failure to docket on the record as filed.

74. On August 24, 2010, the Court yet again failed to docket plaintiff filed appearance on the record leaving bias against the plaintiffs that has led to kidnapping and violations of plaintiff family privacy.

75. On August 27, 2010, in front of Magistrate Adams, the plaintiffs had no knowledge of David Ggae and Teresa Drew illegal hearing that did not include plaintiff parties, plaintiffs' attorneys, GAL to the contrary.

76. At that hearing, Teresa Drew and David Gage knew that they were engaging in unlawful procedure and disturbing a plaintiff/parent father closed custody case without the plaintiffs and their attorneys' permission. Teresa Drew and David Gage misstated the facts in the case record, in order to cover up David Gage previous perjury.

77. On June 7, 2011, Teresa Drew and Caitlin Caldler testified under oath on subpoena before Judge John Boland in defense to Mr. Leftridge subpoena of "all" 2010 services, appearances, discovery, 2010 complete materials.

78. Mr. Leftridge asked the Teresa Drew volumes of questions and was there any 2010 pleadings, 2010 motions, 2010 services, 2010 appearances in her possession or state possessions or control and she said under oath "no". Teresa Drew committed perjury on August 27, 2010 and June 7, 2011 as a pretext to try to unjustly incarcerate plaintiff, violate plaintiffs family privacy, harass plaintiffs and interfere with plaintiffs closed custody case to kidnap plaintiff minor-child son J.L. Teresa Drew continue the threat of incarceration, injuries and unjust harm by filing a unwarranted contempt application that ended up being vacated and was baseless and filed to annoy and harass plaintiffs.

79. During the February 14, 2011 hearing, Judge Shluger mocked and ridiculed Mr. Leftridgen front of his son mother Kenisha Wiggins, to his

shame and embarrassment, and undermined his son's parental respect.

80. At a hearing on February 14, 2011, Mr. Leftridge sought only to have Judge Shluger vacate his arbitrary and unconstitutional September 27, 2010 orders that were illegally entered against plaintiffs.

81. After a brief hearing where only the parties testified, only one order was issued, pertaining against the plaintiff and Mr. Leftridge filed an immediate appeal.

82. At that hearing, most of the testimony of was edited from the hearing transcripts and audio tapes.

83. At a hearing held June 7, 2011, defendant Caitlin Cadler made deliberate misrepresentations, fraud and misleading statements that the Connecticut Attorney General Office has never been involved with plaintiff custody case.

84. Inexplicably, defendant Caitlin Caldler knew their actions was unethical and that they lied about her offices appearance, involvement and defendant Jennifer Aguilar lack of involvement..

85. At a hearing on June 7, 2011, in front of Judge Boland, Caitlin Caldler said she was telling the truth.

86. Mr. Leftridge filed a timely notice of amended appeal. However, Defendant Shaloom Haas and defendants did not docket the amended notice of appeal.

87. On June 12, 2012, Judge Shulger September 27, 2010 rulings were reversed and vacated by the Connecticut Appellate Court.

88. plaintiffs lack the resources to hire a meticulously documented scientific report analysis with computer wave form analysis of several of the hearing tapes in this case, that should be prepared by several forensic audio consultants, showing conclusively that the court transcripts, appearances, court record, audio tapes, tapes were

severely edited. There were also eyewitness affidavits, which stated that material matters which they had heard at the hearings were removed from the tapes.

89. Without even looking at or ruling on the Connecticut Appellate Court final disposed decion, Judge Shluger failed to order respondents-defendants to pay legal fees, and attorneys' fees, pursuant to G.C.S.

90. Months later, Judge Shluger continued to enter arbitrary rulings against plaintiffs.

91. On August 9, 2012, a hearing was held on defendant Sean Kehoe motion to re-open plaintiffs closed custody case that was DENIED by Magistrate Harris Lifshiz.

92. On October 9, 2012, Judge Shluger improperly issued an order reversing Magistrate Harris Lifshiz orders denying defendant Sean Kehoe and Thomas Crean motions to open plaintiff closed custody case.

93. In 2008 through 2013 Mr. Leftridge filed a attorney grievances and Complaints against defendants whom Mr. Leftridge had an open complaint at the Judicial Conduct Commission. Although plaintiffs requested the judge to recuse himself, he nevertheless proceeded with the unconstitutional and arbitrary hearings against the plaintiffs.

94. At the time of the filing of the complaint, there were still no rulings or findings from the court on most of Plaintiff's motions, no proper timely docketing of the motions, and Defendants Kenneth Shluger had repeatedly denied all of Mr. Leftridges motions arbitrarily.

95. On August 9, 2012, Sean Kehoe mad fraudulent statements, misrepresentations and misleading statements to Magistrate Harris Lifshiz to desperately get plaintiffs closed custody case open without the plaintiffs consent or permission in violation of plaintiffs' constitutional rights and substantial rights.

96. On April 27, 2010 Mr. Leftridge was intimidated and almost handcuffed and shackled by the September 27, 2010 unconstitutional

order of the judge shluger while GAL Tammie Gildea and plaintiffs' counsel Attorney Donald R. Williams was never notified that these post proceedings were taking place.

97. At the time of the Teresa Drew contempt hearing, the defendants that were present laughed at plaintiffs and was hoping that Family Magistrate throw plaintiff in the slammer based on the unconstitutional September 27, 2010 Judge Shluger order.

98. On August 9, 2012, Sean Kehoe knew or should have known that plaintiffs filed appearance address was P.O. BOX 747, GROTON, CT 06340 from 2004 – 2012; while at the same time his office is defending the federal case number 3:07cv1166 before the Honorable Judge Bryant.

99. On August 9, 2012, Sean Kehoe was mad that the court denied his motions to open custodial parent/father custody case and Sean Kehoe didn't stop there as a pretext to effect the welfare and safety of plaintiffs custodial minor-child son J.L. to cause plaintiffs egregious burdens, imminent serious physical and emotional harm.

100. J.L. has reached out to his father by other means of digital communication and will be testifying at the federal hearings in light that Sean Kehoe induced his mother to kidnap J.L. and avoid talking to his custodial parent father to bruise plaintiffs father and son relationship.

**Facts Pertaining to Connecticut
Supreme Judicial Court (Supreme Court hereinafter "SJC"):
Jurisdiction and Judicial Over-Reaching Appeal**

101. On May 2013, Mr. Leftridge filed a notice of appeal, constitutionality notice and petition for Supreme Court Justices to the Connecticut Supreme Judicial Court, under applicable C.G.S. and C.G.S. 51-199, alleging essentially jurisdiction, judicial over-reaching, abuses of discretion and violations of res judicata doctrine by defendant Sean Kehoe and Thomas Crean, including the falsified court tapes, files, dockets, and improperly issued orders.

102. After a hearing before the alleged Supreme Court Justices according to Supreme Court Case Manager Carol and Chief Clerk Michellee, the Connecticut Supreme Court disposed and transferred the jurisdiction petition, without stating any claims for the transfer and why the jurisdictional questions should be not be addressed by the Chief Supreme Court Judge pursuant to C.G.S.  The Connecticut Supreme Court would not address the substantive jurisdiction claims and falsified records, impartial court transcripts, edited hearing tapes, diverted files, and visible corruption of officials.

103. Mr. Leftridge has no other legal remedy, since there was no mandated administrative remedy to exhaust prior to seeking SJC intervention for these criminal and judicial violations, and any legal remedy was thwarted by failure to filed appearances, adobe addresses, Judge Cynthia Sweinton May 19, 2005 court room docket orders, GAL Reports, and A.C. 33154 appeals record that was tainted and unusable because of the editing of the hearing tapes..

104. Mr. Leftridge did not appeal an earlier Connecticut Appellate Court decision that was disposed in his favor on June 12, 2012.  Nor did the defendant Sean Kehoe or J.L. mother file any appeal as plaintiffs was waiting for the legal fees, attorney fees and reimbursement from the defendants for WINNING the appeal, which plaintiffs were entitled to as a matter of law for winning A.C. 33154.

Facts Pertaining to the Connecticut Supreme Judicial Court: Jurisdictional Appeal

105. Due to false court transcripts, tampered court record, and perjury by Teresa Drew, Caitlin Caldler and defendants which they used fabricated documents to obtain the Teresa Drew contempt order application, Mr. Leftridge filed a malicious prosecution and civil rights complaint against defendants in Connecticut Commission On Human Rights and Opportunities and U.S. District Court of Connecticut in January of 2011 thru 2012.

106. The defendants filed a special motion to dismiss under the res judicata doctrine on behalf of only "state agencies", which protects state agencies from review suit, when the suit is based solely on court

orders. However, it's on appeal before the Second Circuit Court, which, plaintiffs are challenging the usage of the erroneously doctrines.

107. The Connecticut Supreme Court dismissed Mr. Leftridge's motions for order, injunction that contained supporting evidence which, are covered by the law.

108. Mr. Leftridge review petitions the dismissal to the Connecticut Supreme Court, which the Connecticut Supreme Judicial Court took up for review that is pending.

109. The Supreme Judicial Court has not issued any decision on the dismissal of plaintiffs motions for order, injunction and jurisdictional review.

110. This dismissal established that false claims by Sean Kehoe and perjury by Teresa Drew and Caitlin Caldler and are now protected from suits for malicious prosecution and civil rights, in essence establishing a "perjury protection law", and eliminating a remedy for redress, in violation of the 4th, 5th, 14th Amendment of the Constitution.

111. The judges of the CAC acted in a nonadjudicatory fashion and, in effect, rewrote joint custody statute in such a manner that they suspended it and usurped a legislative function in violation of the constitutionally guaranteed separation of powers, and thereby violated Articles of the Connecticut Constitution, Common Laws and Declaration of Rights.

### Failure of Connecticut Appellate Court Justices to Correct Wrongdoing and to Train

112. In March of 2013 through July 2013, Plaintiffs appellate court proper pleadings and presented facts that the Magistrate Court and Attorney General Office lack personal and subject matter jurisdiction over the plaintiffs pursuant to res judicata doctrine.

Appellate Court was provided clear and convincing evidence, materials and voluminous material proving the facts set forth in this complaint regarding Defendant Judge Shluger retaliation, unlawful

conduct and Sean Kehoe violations of res judicata doctrine including having the Chief Justice of the Supreme Court intervene over the Connecticut Magistrate and Family Court, after the Connecticut Appellate Court would not intervene.

113. Connecticut Appellate Court did not address the substantive issues set forth in Mr. Leftridge's appeal, submission, namely the falsified master records, court transcripts, tapes and court record in the Norwich Probate and Family Court, and the actions of its corrupt officials.

114. In an attempt to justify destruction of certain of the falsely edited tapes, Connecticut Appellate Court refused to acknowledge the application of Connecticut Practice Book Rules, which requires court transcripts, court record, appearances, tapes to be saved as long as the matter is pending in any court.

115. To date, Judge Shluger has not admitted to, or taken action to correct the pervasive wrongdoing in his Courts, which has obstructed and delayed Mr. Leftridge's due process even further.

116. Judge Shluger has failed to train the defendant Magistrates in the proper procedure and administration of the law.

117. Judge Shluger has covered up the illegal tampering with the court record, hearing tapes, court transcripts, appearances, dockets, case files, and other official records of the Norwich Magistrate and Family Court.

118. Judge Shluger and Judge John Boland has failed to require the Norwich Clerks Office and Magistrate and Family Court to correct the false docket entries in Mr. Leftridge's file.

119. Judge Shluger has failed to require the defendants to docket all the filed appearances on the record, which he or his agents removed from the impounded file.

120. Judge Shluger has failed to train personal sufficiently and ensure

that case files are available to the public, and confidential reports are kept in the impounded file, according to Connecticut law.

121. Judge Shluger has failed to propound appropriate standards and requirements for guardians' ad litem in the Norwich Magistrate and Family Court, so that GAL Tammie Gildea was not constrained to obey any requirement to file their report, as ordered by the court.

122. Judge Shluger has failed to instruct the Norwich Magistrate and Family Court judges to obey Connecticut General Statues, Constitution, and Connecticut Common General Laws, requiring the State of Connecticut to pay for all A.C. 33154 Apeal fees court ordered guardian ad litem reports.

## Facts Involving Hearing Tapes

123. The hearing tapes of at least seven of the hearings in the custody final order case have been materially edited, and a substantial amount of material has been removed from them. The edits are not random; they are carefully crafted to remove material that was damaging to plaintiffs and helpful to defendants.

124. The tape of the May 19, 2005, August 27, 2010, June 7, 2011, February 14, 2011 and several other hearings in front of Judge Cynthia Sweinton, Magistrate Harris and Judge Shluger was edited in several critical places. For example:

1. The entire discussion where Defendant Sean Kehoe engaged in a lengthy and heated discussion with the Magistrate Harris Liftiz on August 9, 2012, in which he expressed his opinion that magistrate reopen plaintiff closed custody case, which, was DENIED.

 2. The perjured testimony of Teresa Drew on June 7, 2011 was entirely removed.

125. The tape of the 2004 Judge Domnarski hearing ordering plaintiff to have his custodial minor child for four days was edited to remove about several minutes of the Judge Domnarski custody orders.

126. The tape of the August 27, 2010 hearing in front of Magistrate Adams was edited to remove the defendant Jennifer Aguilar presents and magistrate's entire discussion of a take on the papers motion to vacate to he found that Mr. Leftridge was never properly served. This testimony has also been removed from the case transcript and is being investigated by Edna Press.

127. The tape of the February 14, 2011 hearing in front of Judge Shluger was edited to remove the record of the judge threating and harassing plaintiff including the several threats of jailing Mr. Leftridge.

128. GAL Tammie Gildea Report, Recommendations, appearances, and other materials that was missing from the court record and tapes.

129. Edna Nurse is reviewing all the Audio Tape Reports and requiring her employees to correct the impartial transcripts and volumes of errors for accurate and complete impounding of all the incomplete hearing transcript recordings and tapes.

130. It is alleged that defendant David Gage and defendants coached court reporters to compromise transcripts and change the picture.

131. On 2013 a Chief Court Transcript Reporter for the Connecticut Judicial Branch was able to observe the volume of court reporter errors, and impartial tape duplication and transcripts by the Norwich Magistrate and Family Court, and speak to Defendants New London Court Reporter, the employee who supervises that office. MS. Edna Press discovered unusual errors in the transcripts.

132. On information and belief, Defendants Jane Does, at the direction of defendants John Does, and the Defendant judges, edited the transcripts and tapes of Mr. Leftridge's hearings.

133. After Mr. Leftridge discovered the transcripts and tapes were edited and complained about it, one or more of the Defendants tampered, compromised and destroyed several of the master hearing tapes.

134. In Connecticut Appellate Court ruling on Mr. Leftridge's Motion
For Review to Correct the Record, it is alleged that the Appellate Court
attorneys deliberately misquoted the Connecticut Appellate Court
Rules requiring the preservation of audio tapes, Court Practice Book
Rules, which requires tapes to be saved as long as the matter is
pending in any court, and justified their destruction.

135. Judge Shluger also summarily refused to address the issue of the
incomplete transcripts, tape editing, with a certified statement that he
had confidence in the court record, tapes, and did not respond to the
specific scientific proof of their editing, thereby covering for the
wrongdoing of his fellow defendants.

136. To date, none of the defendants have addressed or disproved a
single allegation in the Transcripts and Tape Report. No one has
provided proof to refute any of the edits or changes alleged by Mr.
Leftridge, except Edna Press, or his allegations that the defendants
were responsible for them.

137. Mr. Leftridge purchased copies of the record that was incomplete
and had coffee stains on the records. Plaintiffs also requested
complete hearing tapes from the Court, and for them to be transcribed
accurately and completely, all at substantial personal expense, only to
find that they were falsified, and thus useless for purposes of appeal,
impeachment, or support of his motions.

138. Any appeal using the falsified written record and edited audio
tapes would be unfair and invalid, since the Appeals Court would not
have a true record of the proceedings below.

139. In 2012 through April of 2013, Mr. Leftridge requested that
Defendants provide him with complete records, appearances,
complete transcripts, audio tape of the hearings in custody final
orders case, which was improperly docketed than all the other similar
party cases.

140. Edna Press stated that the tapes were impounded by New London
Jurisdiction Court Reporters Office. However, none of the audio tapes
in the custody case were impounded.

**141. Mr. Leftridge consulted with Chief Court Reporter Edna Press, and stated that she would give audio recorded tapes to Mr. Leftridge because of the volumes of errors and incomplete impartial transcripts.**

**Facts Concerning Mr. Leftridge's Case File**

**142. The Norwich Clerk's office and their court reporters office have extensively manipulated the case file (including an impounded part of the file) in Mr. Leftridge's Case.**

**143. Mr. Leftridge has rarely been allowed to see his case file, or its completed and accurate impounded portion, since August 24, 2010, when he first went to see his closed custody case file. Mr. Leftridge had requested reimbursement for the monies he paid to defendants for a copy of the entire complete file, which, plaintiffs attempted to see the Impounded File dozens of times during this case, but, was told by Kraig deputy chief clerk that it was in Enfiled Connecticut. He is also usually told that it cannot be found. Counsel withdrawn counsel Rose McClain was delivered a copy of the court file which, plaintiff complained that it is incomplete and missing volumes of documents and demanded repayment for the incomplete file but, despite repeated requests to defendant Kraig and David Gage, has not been reimbursed for the incomplete record or seen a complete impounded record.**

**144. The contents of the case file have been repeatedly tampered with by the entire defendant Clerks, and Defendants Assistant Attorney Generals and Teresa Drew. Motions have disappeared, appearances not filed on docket properly, services disappearing, secret affidavits have appeared, the docket has been altered, and the file contents have varied.**

**145. Documents from Mr. Leftridge's active case file, and filed appearances services had the opposing parties' names and addresses crossed out, and were improperly erased by white out strips, stamped 'improperly', by defendants John Doe and/or Jane Doe.**

**146. GAL Tammie Gildea filed appearance has simply disappeared from the file, along with the entire discussion of it on the transcripts and audio tapes.**

147. 2004, at a hearing at which GAL Tammie Gildea appeared and she obtain a copy of the custody case file for her proper representation of plaintiffs minor child son J.L. However, GAL Tammie Gildea GAL report and her filed appearances is missing just like other documents that are not shown on the docket.

148. Mr. Leftridge first review the closed custody case file on August 24, 2010, and their was no 2010 orders, no 2010 Teresa Drew appearances or any 2010 pleadings in the court file as substantiated by defendant David Gage.

149. In 2012 and 2013 plaintiff attempted to see the file. It was not there either time.

150. Defendants have secretly placed things in plaintiffs' custody file that were not there on May 19, 2005 through August 24, 2010.. It was not placed in evidence, nor shown to plaintiff attorneys or the defendant or GAL Tammie Gildea.

151. On several occasions before motion hearings, the case file was not there, and Mr. Leftridge was precluded from reviewing it. The entire file, including the GAL Recommendations, 2004 Family Relations Report and GAL filed appearance disappeared.

152. On October 9, 2012, Judge Shluger allowed Thomas Crean to prosecute Sean Kehoe late filed magistrate appeal that he knows is illegal because the state can't file magistrate appeals on behalf of respondents.

153. In 2013, Mr. Leftridge again attempted to obtain his monies that he paid for a complete case file, but, was deprived by David Gage and Kraig.

154. In 2012 through 2013, Mr. Leftridge attempted to see Connecticut Appellate Court Case file and was told on volumes of occasions that it was unavailable.  It is alleged that the Connecticut Appellate Court case managers and certain paralegals have also concealed records and compromised court files.

156. Plaintiffs are the Petitioner and plaintiffs in the state court and has appealed several rulings in this case, as far back as February 14, 2011. Not one has been acknowledged, to GAL Tammie Gildea's knowledge, negating any appeal remedy on behalf of plaintiff J.L.

157. The defendants have repeatedly denied access to Mr. Leftridge's impounded file for years since 2010, by each of the defendants Clerks, and by Connecticut Appellate COURT ATTORNEYS.

158. 2004 GAL Tammie Gildea filed appearance has been removed from the impounded court file.

159. 2005 GAL Tammie Gildea alleged report has been removed from the file.

160. On June 12, 2012, plaintiffs was victorious in their Connecticut Appellate Court Appeal.

161. Sean Kehoe has responded to harass plaintiffs and destroy plaintiffs' parental custodial parent bond that led to the kidnapping.

162. In 2012, David Gage brought Rose McClain a copy of the court file that he is alleged to have copied, which, was missing several legal documents.

163. Even though the copies that was sent to the Mr. Leftridge and Connecticut Appellate Courts is not accurate, has been organized by the defendants to cover-up the kidnapping and injuries complained of for concealing and placing secret documents in the impounded file.

164. Other documents in the impounded file have also been tampered with. The impounded GAL report and filed appearance by Defendant Tammie Gildea is missing as described above, which, is consistent to the tampering of the court file, impartial transcripts and record.

165. Defendant David Gage organized the kidnapping with the defendants and used his color of law abuses to poison proceedings at the Connecticut Appellate Court and processes before the Dept. of Social Services, the medical records, GAL Records, and other records.

166. Similarly, other evidence, exhibits and entry of unknown affidavits were removed from the impounded case file, and never returned.

### Facts About the Manipulation of the Docket

167. Between January 2004 and August 27, 2010, not one filed appearances was docketed by defendants, even though several clerks at the office stated that they were behind in docketing, but a check of other docket sheets showed motions docketed within one or two weeks after hearings.

168. On January 2010 through July 8, 2013, Laurie Gilbert, Shaloom Haas and defendants to the Connecticut Judicial Branch within the Norwich Magistrate and Family Court, the court failed to docket all any of plaintiffs appearances which there is still no showing of any docket entry's reflecting the appearances which defendants refuse to docket to date as a part of the tampering and concealment of legal records and documents to date.

168. (b) Jane Doe Court Reportors in collusion with defendants made intentional errors to court record transcripts and audio records as a pretext to conceal testimony and evidence that they knew was impartial, bias, unlawful and unconstitutional  against plaintiffs.

169. The docket of the Leftridge post custody case does not contain notations listing of any filed appearances and most of the documents which are or should be impounded.

170. Recently, the court began to docket more various public and impounded documents which it had long withheld, "lost", or refused to docket. Many entries are placed in formerly empty spots on the page, and some are squeezed in between the lines of others, including no sign of defendant Tammie Gildea GAL filed appearance and GAL report, which has not been inserted, or plaintiff attorney Donald Williams 2004 appearance or plaintiffs 2004 appearances, which, has been concealed by the defendants and those they involved in the corruption.

**171. At a process on Plaintiff's Motion for Review to Correct the Record in the Magistrate and Family Court on or about July 8, 2013, Connecticut Appellate Court, when confronted with evidence of blatant revisions and fabrications in the court reporters transcripts, appearances, docket sheet and has ignored that "the impartial court transcripts and docket is no good".**

### Mr. Leftridge Threatened

**172. On February 14, 2011, Mr. Leftridge was threatening arbitrarily by Judge Sluger, rather than him given a statutorily required motion to vacate pleadings hearing.**

**173. On April 27, 2010, Mr. Leftridge was threatening with unjust incarceration for an unconstitutional and illegal September 27, 2010 Judge Shulger order that was later vacated and reversed by the Connecticut Appellate Court in A.C. 33154. in this case Teresa Drew presented a doctored copy of a Judge Shluger September 27, 2010 order to the Magistrate Harris Litz, alleging Mr. Leftridge had violated it. However, Mr. Leftridge had a copy of the authenic genuine May 19, 2005 final transcribed orders, which he had not violated, and was able to refute Teresa Drew allegations with honest and accurate facts. The magistrate, rather than ask Teresa Drew about this and turned to Defendant a non-parties for an explanation.**

**174. Mr. Leftridge requested a copy of the complete transcripts, audio recordings and audio tapes order submitted to the court, and a copy of the tape of all the audio recorded hearings. The audio recorded requests were refused.**

**175. In 2007 plaintiff was threaten with violence by defendant David Gage, which, David Gage directly stated to plaintiff that if anyone comes into his yard they will be shot and continue to emotionally abuse plaintiff to scare him with violence. The harassment and threats was severe enough that he had to seek medical treatment.**

**176. On August 24, 2010, when plaintiff went to check the closed custody file at the Norwich Family Court Clerk's Office, most of the**

documents had been tampered with, appearances and documents removed.

### Facts Pertaining to Tammie Gildea GAL Evaluation

177. On or about February 2005, Judge Cynthia Sweinton ordered that an evaluation of Mr. Leftridge, his x-girlfriend Kenisha Wiggins, and their son Juwan James Leftridge, take place with Tammie Gildea and at the New London Family Relations Division for mediation.

178. This evaluation was to fulfill order of Judge Devine that there be an evidentiary hearing on custody, to be scheduled upon completion of the evaluation.

179. Defendant Judge Domnarski in 2004 ordered Mr. Leftridge that he is to continuing having his minor-child son every Wednesday evening over-night till Thursday morning and every weekend from Friday 5pm through Monday 8am for drop off to school or mothers home.  Plaintiff paid for the travel from and to until the entire cost for all court ordered GAL evaluations were completed by Tammie Gildea.

180. Defendant paid thousands of the public's dollars in advance for the evaluation to defendant Tammie Gildea, and Tammie Gildea accepted such payment, in light of the law requiring the State of Connecticut to pay such legal costs for proper services to plaintiffs minor-child son J.L..

181. In August or early September of 2011 through July 24, 2013, defendant GAL Tammie Gildea has continued to refuse to disclose and return records and avoid plaintiffs because she knows her actions and lack of proper representation was unethical and unconstitutional.

182. Defendant Tammie Gildea has never withdrawn her 2004 filed appearance from plaintiff custody case and did not maintain high standards of conduct in carrying out her duties and obligations in protecting plaintiff minor-child son J.L. for the injuries complained

183. Defendant Tammie Gildea did not and has not diligently represent J.L. and plaintiffs best interests, which, lead to the kidnapping.

184. At hearings 2004 - 2005, Judges ordered Defendant Tammie Gildea that an evaluation be completed honestly.

185. Nonetheless, Defendant Tammie Gildea did not obey the courts orders for a complete evaluation, and have not completed it to this day in violation of her attorney conduct.

186. As a consequence, Mr. Leftridge has never had the evidentiary hearing which was dependent on the proper completion of the GAL report, and has consequently never been allowed to present any GAL report to safe guard the established May 19, 2005 custody of his son J.L. was born.

187. David Gage threatened Mr. Leftridge with violence to take plaintiff away from his son J.L. and colluded with the other defendants to kidnap plaintiff son J.L. and cause plaintiffs irreparable harm and injuries that has mounted to huge financial losses and ballooned legal fees because of the unethical actions of Defendant Tammie Gildea

188. Mr. Leftridge was forced to offend himself at a number of court hearings during and after the 2010 invasion and interferences by the defendants, which could have been avoided, had the GAL to performed her ordered duties, and produce a honest report.

189. Mr. Leftridge did not appeal the May 19, 2005 Final Custody Orders, pending the production of the GAL report, after which he anticipated the court-mandated evidentiary hearing to overturn to the dishonest recommendation, once the misleading GAL report was exposed.

190. During the time in which the guardian ad litem was controlling the representation of Mr. Leftridge's son J.L., aged 6 through 16, Mr. Leftridge shared joint legal custody with the mother Kenisha Wiggins. However, the GAL hid the facts from the court that the mother worked every weekend and that plaintiff minor-child son has always lived with the father four days per week and every weekend.

191. Defendant Tammie Gildea knew that the child was living in an emotional abusive and unwarranted situation, not only failing to do anything to stop it, but allowing and encouraging it, thus becoming complicit in J.L.'s abuse and stress that lead to physical illnesses. The GAL allowed J.L. to go through these injuries and knew that she was not respecting the plaintiffs and the privacy of the child and J.L. family.

192. Additionally, if not for the actions of Defendant Tammie Gildea J.L. would not have been placed in special education without Mr. Leftridge's knowledge or permission, with Tammie Gildea knowledge.

193. Defendant Tammie Gildea is friends with the other defendants and knew her actions were unconstitutional, unethical and in bad faith that has caused plaintiffs severe injuries, harms and egregious losses.

194. After coming to his father for help via text and digital messages, J.L. was hounded by the "plotters", and defendant Sean Kehoe to make false allegations that he didn't want to see his father against Mr. Leftridge and is suffering emotionally because of defendants continued actions.

195. Defendant Tammie Gildea has not refunded the money paid by the public tax paying dollars for the report it did not produce, despite being asked to do so, and has failed to disclose the 2005 invoice for the cost she billed to the State of Connecticut.

196. Defendant Tammie Gildea presented a secret ex parte report that plaintiff has not seen, which, Defendant Tammie Gildea will not let Mr. Leftridge have a copy of it.

197. On July 17, 2013 and July 22, 2013 Defendant Tammie Gildea was mailed letters to return records, notes, all complete reports and records regarding plaintiff minor child son J.L. and to contact Mr. Leftridge, which she has continued to ignore plaintiffs' phone calls and parental notification. Thus, to date Defendant Tammie Gildea continues to act in bad faith and avoids plaintiffs' parental request for records and reports.

## Facts About the Connecticut
## Department of Social Services

198. The Defendant Connecticut of Social Services ("DSS") does not have custody of J.L. and is attempting to unlawfully take custody of J.L. as part of the unjust scandal.

199. Mr. Leftridge was never notified by GAL Tammie Gildea, his attorney Donald R. Williams, or the Court of any of the proceedings. They engaged in post ex parte hearings without informing GAL Tammie Gildea, plaintiffs then attorney Donald R. Williams or Mr. Leftridge, who found out for the first time almost a year later.

200. DSS has NEVER been a party against the plaintiffs in any forum and allowed the plaintiff child to live in an abusive, exploitative, drug and alcohol saturated relationship with a respondent mother, with whom he had a child, all without informing the father.

201. David Gage has friends in Norwich Family Clerks Office to manipulate filed appearances and the contents of the files which were used by DSS, in order to show their rights to interfere with the May 19, 2005 tax exempt orders to plaintiffs.

202. DSS has to this day refused to produce its complete records to Mr. Leftridge.

## Facts Concerning Damages

203. The defendant Teresa Drew and defendants' actions in attempting to unjustly incarcerate plaintiff and issue an illegal April 27, 2011 contempt application and August 2012 Capias application as a pretext to racially harass plaintiffs based on perjured testimony by Teresa Drew, David Gage, Sean Kehoe, Caitlin Caldler, and covering up with falsified records, has damaged Mr. Leftridge by loss of consortium with his son for two years and continuing.

204. The Defendants' actions in kidnapping his son under color of law have caused Mr. Leftridge substantial emotional and physical distress. He has been harmed and has been suffering from worry about the

welfare of his son, grief from the loss of a meaningful relationship with him and watching him be injured and abused, induced into not wanting to see his father and recycled through the unjust system with arrests, incarceration and status quo incarceration of young black males, etc. He has felt stress, humiliation, anxiety, fear for his son's safety and well-being, loss of trust, loss of confidence in and feelings of betrayal by the justice system, shock, and emotional scarring, all compensable as emotional distress, and other damages.

205. Mr. Leftridge's and J.L. was injured physically and emotionally by agents of the defendants, when he was deprived of their protected substantial rights, deprived protected family privacy, deprived awarded joint custodial parent rights, beaten emotionally, and threatened to stop his legal proceedings, or he would be shot in David Gage yard and not see his son again.

206. The defendants deprived Mr. Leftridge's and J.L. of their protected 4th Amendment rights to equal protection of the law, due to the gender bias, disability discrimination, false contempt application requested order, which illegally removed their financially ability to offended against the racial harassment, abuses, psychological and emotional attacks by the defendants' agents.

207. The Defendants damaged Mr. Leftridge's by hampering his ability to engage in his state government profession due to the emotional stress, humiliation, fraud, stonewalling, collusion, and corruption, and the amount of time spent offending himself against the false allegations, which has resulted in a drastic loss of earning capacity and income.

208. Since the defendants' Teresa Drew perjury on August 27, 2010 and June 7, 2011 and Teresa Drew misleading allegations through the defendants, Mr. Leftridge's and J.L. has been put on a non-custodial respondent registry of non-custodial parents, which is illegal and virtually destroyed plaintiff ability to get credit for loans because of the illegal reporting of inaccurate information to the credit bureaus, electronics and other agencies because of the actions of the defendants.

209. Mr. Leftridge's and J.L. has been damaged by substantial legal fees to offend himself in several illegal hearings held and during the pendency of the GAL evaluation, which would have been unneeded had the defendant judges and GAL defendants performed their contractual duties.

210. Mr. Leftridge's and J.L. has been damaged in the amount of $100000.00 in legal fees, and liability for $23,000.00 more, in violation of Connecticut law.

211. Mr. Leftridge's and J.L. has been damaged by the assessment of several thousands of dollars in attorneys' fees offending a case that was closed on May 19, 2005, and unconstitutionally interfered with by the defendants and for bringing motions to the Court to seek to correct the record that the defendants falsified, prior to rulings on those motions.

212. Mr. Leftridge's and J.L. has been damaged by being threatened by falsely incarceration in the Norwich Court Correction for tampered/compromised court records and September 27, 2010 order that was VACATED and REVERSED by the Appellate Court.

213. Mr. Leftridge's and J.L. has been damaged by repeated deprivation of his due process rights to an appeal, since there is no accurate record from which to appeal.

214. Mr. Leftridge's and J.L. has been damaged by forbearing on appeals of several early VACATED orders, and thus UNLAWFUL procedures and practices to his right of appeal, due to his reliance on the FINAL May 19, 2005 Judgment and FINAL May 19, 2005 orders and promise of an evidentiary hearing by judge Boland.

215. The defendants' failure to act in a timely fashion both administratively and judicially, and continue to ignore the evidence, refer the matter the others, or blame Mr. Leftridge, have led to inexcusable delays, and violate Mr. Leftridge's right to due process.

216. The financial pressure caused by the defendants is forcing Mr. Leftridge to file for protection under Chapter 7 of the United States Bankruptcy code, incurring further financial stresses.

## COUNT I
### Violation of Civil Rights- Official Capacity Defendants Only

217. Plaintiff reasserts and incorporates all averments set forth above into this count.

218. The judges, clerks and Record Keepers officials in the Norwich Magistrate and Family Court have engaged in a pattern and practice of violating Mr. Leftridge's and his minor child J.L.  Protected family privacy and due process rights as protected under the 5th and 14th Amendments to the United States Constitution, as follows:

A. The right to appeal adverse decisions in his hearings, due to falsified transcripts, impartial recorded hearing tapes, concealment of the case record, concealment of GAL Recommendations, concealment of filed appearances, manipulation of the case file, falsification of the case docket, refusal to docket hearings, and the removal of key documents from the record;

B. The right to a fair, unbiased tribunal;

C. The right to timely justice, rather than continual delays.

D. The right to an accurate, truthful, complete written and audio record of the case;

E. The right of access to the public case record and impounded record of this case;

F. The right to audio records and tapes of hearings, rather than their destruction by the court in a case that is open.

G. The right to an evidentiary hearing in this matter, with an accurate, complete, and truthful record;

H. The right to be heard before being threatened by any abusive or unjust incarcerated;

I. The right to be free from unjust incarceration over non-payment of attorney's fees to an opponent's lawyer;

J. The right to enjoy the companionship and direct the upbringing of his son.

219. All the actions of the defendants set forth above were done under color of law.

220. No effective remedy at law is available. The court from which Mr. Leftridge has sought a remedy is corrupt and is thwarting every attempt to obtain a remedy, withholding the case file, falsifying the record, making any appeal impossible by failing to docket hearings, denying the falsified record after being shown irrefutable scientific proof, making appeal impossible because any record on appeal would be materially tainted, refusing to allow an evidentiary hearing where these issues could be addressed, and attempts of incarcerating Mr. Leftridge without an opportunity to be heard.

221. The plaintiff has been damaged in numerous ways by the defendants' actions and failure to act, as set forth in the "Damages" section above.

WHEREFORE, the Plaintiff requests the following equitable relief:

A. Appoint a special master to investigate the falsification, destruction and concealment of audio tapes, court transcripts, hearing tapes in the Norwich Family Court case, to determine who tampered and did the editing, which transcripts and tapes were edited, when and how it was accomplished, who improperly destroyed appearances, court transcripts, hearing tapes, and who ordered it to be done;

B. Issue a temporary and permanent injunction, enjoining the Norwich Magistrate Court and Family Court judges, and their agents, from editing, falsifying, destroying, and concealing audio transcribed recordings and tapes of hearings in this case;

C. Issue an order to the Chief Judge and Norwich Family Court, requiring them to provide Mr. Leftridge with any available unedited copies of tapes of all hearings in this case, as well as transcripts of such tapes, at the expense of the State of Connecticut;

D. Issue an injunction to the Norwich Clerks Office and Records Keeper Holder, enjoining them from failing to Docket all filed appearances, motions, orders, documents, and hearings in this matter in a timely manner;

E. Issue an injunction to the Norwich Family Court and Records Keeper Holder, enjoining him or his agents from withholding the recorded audio tapes and case file, including the impounded file, in this case, from inspection by Mr. Leftridge and his counsel at any time upon reasonable request and notice;

F. Issue an injunction to the Norwich Family Court Clerk's Office and Records Keeper Holder, enjoining him or his agents from withholding or removing any documents that should be properly contained in Mr. Leftridge's case file, past or future;

G. Issue an order to require a full accounting by the GAL Tammie Lynn Gildea appointed in this matter, as to why it has never produced records requested by the plaintiffs or any reports ordered by the judge in November of 2005;

H. Issue an order to Connecticut Supreme Court Judges, Chief Justice of the Connecticut Family Court, to fully investigate the wrongdoing in the Norwich Family Court;

I. Issue an order to Judge Kenneth Shluger requiring him to hold a full evidentiary hearing in the post matter and restraining order, after all the fraud and false documentation by the court is corrected.

J. Issue an order requiring Judge Kenneth Shluger and Judge John Boland to make referrals to the Connecticut Chief State Attorney for any criminal violations of laws against tampering, manipulating and compromise with public records which the investigation uncovers.

K. Issue an order for legal and attorney's fees and costs against the defendants necessary to prosecute this action.

L. Issue an order to remove Mr. Leftridge's name from the state judicial system court reports;

M. Any other relief that is just, in order to redress the harm that these actions have done to Mr. Leftridge and his son J.L.

## COUNT II
### Civil Rights Violations - Individual Capacity Defendants Only

222. Plaintiff reasserts and incorporates all averments set forth above into this count.

223. The defendants, in their individual capacity, engaged in a pattern and practice of depriving Mr. Leftridge and his minor-child J.L. of their protected due process rights under the 4th, 5th and 14th Amendments to the United States Constitution, as set forth above.

224. Defendant David Gage by his threat "not to come in his yard", and John Does One and Two threatened Mr. Leftridge to not exercise his due process rights in court.

225. All of the actions by the defendants set forth above were done under color of law.

226. Defendants, acting in collusion with an uncertain number of the state defendants, helped these state defendants to violate Mr. Leftridge's due process rights.

227. The plaintiff was damaged by the defendants' actions, as set forth above.

WHEREFORE, the plaintiff requests the following relief:

A. A judgment in the plaintiff's favor that the all of the defendants, personally, individually and in concert, violated Mr. Leftridge's protected 4th, 5th and 14th Amendment due process rights;

B. An award of money damages against all the defendants for violation of his civil rights;

C. An award of money damages against all the defendants for loss of consortium with his son;

D. An award of money damages against all of the defendants for emotional distress;

E. An award of money damages against Jane Does and John Does One and Two, for medical expenses and pain and suffering from the injuries and irreparable harm cause by their actions;

F. An award for previously expended attorney's fees for offense against the defendants' improper actions in the Norwich Family Court;

G. An award of legal fees, attorney's fees and costs for prosecuting this action;

H. Any other relief which seems just;

## COUNT III
### Declaratory Judgment – Connecticut Joint Custody Laws

228. Plaintiff reasserts and incorporates all averments set forth above into this count.

229. The Connecticut General Statues Joint Custody Laws, as applied, deprives persons of a remedy at law, in violation of the due process requirement in the Fourteenth Amendment to the United States Constitution, and Articles of the Connecticut Constitution, Common Laws and Declaration of Rights.

230. The judges of the Norwich Family Court acted in a non-adjudicatory fashion and, in effect, abused the joint custody statute in such a manner that they suspended it and usurped an abuse of discretion, activist and arbitrary function in violation of the constitutionally guaranteed separation of powers, and thereby violated

Connecticut Common Laws, and Articles of the Connecticut
Constitution and Declaration of Rights.

WHEREFORE, plaintiff requests that the court declare that Connecticut
General Statues Joint Custody Laws is unconstitutional, as applied.

## COUNT IV
### Intentional Interference With Parental Rights - State Claim

231. The personal, individual and defendants, as well as the DSS,
individually, and in conspiracy with each other, intentionally interfered
with Mr. Leftridge's parent- child relationship with his son J.L.,
resulting in a loss of filial consortium.

232. The defendants, in essence, abducted, enticed, harbored and
secreted J.L. from a Father who has legal custody.

233. Through an active and wrongful effort, knowing that Mr. Leftridge
did not consent, the defendants induced J.L. to avoid his father and
induced Kenisha Wiggins to deprive plaintiff from returning to J.L.
Father's home.

234. The defendants further encouraged the child, once away from Mr.
Leftridge's home without consent, harbored him and continued to keep
him away from the parent.

235. While away, the defendants placed J.L in a damaging emotional
condition and relationship which further interfered with J.L.
relationship with his father Vernon James Leftridge Jr.

236. The defendant Sean Kehoe induced and enticed Kenisha Wiggins
to deprive plaintiff from seeing his minor-child son J.L. in violation of
state parent custody interference law

237. Defendants and defendants Tammie Lynn Gildea, Teresa Drew,
David Gage, Sean Kean, and Thomas Crean has been, and continues to
be substantially damaged by the disruption of this relationship.

238. The Father has been substantially damaged, as set forth above, by the intentional interference with his relationship with his son.

239. Defendants Sean Kehoe and Thomas Crean engaged in ex parte communication with defendant Sandra Baird in bad faith without plaintiffs' knowledge or any notice as a pretext to Magistrate shop after the Honorable Harris Liftiz had denied their state pleadings to open plaintiffs closed custody case.

240. Defendants Sean Kehoe and Thomas Crean engaged color of law abuses to intentionally harass plaintiffs and interfered with plaintiffs' family privacy in bad faith because a magistrate denied their attempt to reopen plaintiffs' closed custody case.

241. If not for the actions of the defendants, plaintiffs would not have been harmed, would not have suffered financial losses, plaintiff minor-child son J.L. would not have been kidnapped and plaintiffs family privacy would not have been illegally invaded.

242. Defendant Sandra Baird engaged in ex parte communication with opposing Thomas Crean and Sean Kehoe that she knew was unethical and bias against the plaintiffs, which, contributed to the plaintiffs injuries and harms

243. Defendant Sandra Baird lacks personal and subject matter over the plaintiffs and work in concert with Connecticut Attorney General assistants to seriously harm, financially injure plaintiffs, interfered with plaintiffs family privacy, interfere with plaintiffs closed custody case that was final on May 19, 2005 and never petitioned by the custodial parent father to be reopened.

244. Defendant Judge Boland and Judge Shluger both knew that their actions in their personal, individual and official capacities against plaintiffs were unconstitutional, arbitrary, bad faith against the plaintiffs as a pretext to condone harassment against plaintiffs, interferences, kidnapping, cover-up tampering of court records/transcripts, unlawful and unconstitutional/ unjust practices and acts by the other defendants that has egregiously harmed plaintiffs and their family privacy.

**WHEREFORE, Mr. Leftridge requests the following relief:**

**A. Damages for the loss of the years with his minor child son J.L.**

**B. Damages for the emotional harm done to Mr. Leftridge and his minor-child J.L., as they daily are injured by the emotional distress, injuries, and losses.**

**C. Damages for cost of recovering the child;**

**D. Expenses for Mr. Leftridge to obtain treatment for the child's emotional state, physical illnesses, additions, therapy, and recovery from the emotional and psychological abuse which they suffered because of the actions of the defendants in keeping J.L. from his Father.**

**E. Economic Damages for cost associated to harm caused**

**F. Damages for pain and suffering**

**G. Punitive damages**

**H. Reimbursement of legal fees and attorney fees**

**I. Permanent Restraining order against defendants**

**J. Any and all applicable damages that jury finds reasonable, just and fair.**

**Plaintiff requests a jury trial on all issues so triable.**

Respectfully submitted,

The Plaintiffs,

Vernon James Leftridge Jr.  & Minor-Child J.L.
73 A. CONGRESS STREET
HARTFORD, CT 06114
(860)961-4704